UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LAQUINTA HIGHTOWER-MATHIS, | Case No. 23-13310 |
| Plaintiff, | Sean F. Cox |
| v. | Chief United States District Judge |
| NEXTCARE MICHIGAN PROVIDERS, PLLC, | Curtis Ivy, Jr. |
| Defendants. | United States Magistrate Judge |
| _____/ | |

**ORDER DENYING MOTION FOR PROTECTIVE ORDER (ECF No. 9)
AND GRANTING MOTION TO COMPEL (ECF No. 11)**

## I.   PROCEDURAL HISTORY

Plaintiff LaQuinta Hightower-Mathis filed this matter on December 29, 2023.  (ECF No. 1).  On August 5, 2024, Defendant Nextcare Michigan Providers ("Nextcare") filed a motion for protective order to prevent Plaintiff from deposing its corporate representative until completion of Plaintiff's deposition.  (ECF No. 9).  Plaintiff responded.  (ECF No. 13).  Plaintiff then filed a motion to compel the depositions of Defendant's corporate designee.  (ECF No. 11).  The motion is fully briefed.  (ECF Nos. 14, 15).  The motions were referred to the undersigned.  (ECF Nos. 10, 12).

## II.   BACKGROUND

Plaintiff is an African American woman. (ECF No. 1, PageID.2). She began working for Michigan Urgent Care ("Urgent Care") in Grosse Pointe as a medical receptionist. (ECF No. 1, PageID.2). While there, "Plaintiff would often experience different treatment than her non-African American co-workers." (*Id.*). Plaintiff would attempt to "go above and beyond in her work" but "observed that Defendant would discipline or terminate" her. (*Id.*).

On or around July 5, 2022, Officer Duncan, a Caucasian man, came in for treatment. (*Id.*). Plaintiff engaged in small talk with him. (*Id.* at PageID.3). Her coworker handed him required paperwork and registered him. (*Id.*). Sgt. Mark, another Caucasian man, also walked into the clinic and said hello to Officer Duncan. (*Id.*). He asked Officer Duncan if he was okay. (*Id.*). Officer Duncan said he was. (*Id.*). Plaintiff also responded "in a joking manner 'Yes he's okay, we're not bothering him.'" (*Id.*). Sgt. Mark then walked over to Plaintiff's desk and requested to speak with her manager. (*Id.*). Plaintiff told Sgt. Mark that her manager was out of office. (*Id.*). Sgt. Mark then requested to speak with whoever was in charge of the facility at the time. (*Id.*). Plaintiff was "[s]hocked" and "asked Sgt[.] Mark if he was serious." (*Id.*). Sgt. Mark told her he was serious, and turned on his body camera to record Plaintiff handing him a business card and spelling her first and last name. (*Id.*).

Sgt. Mark then "appeared to be calling the phone number on the business card" and "walked to the back of the clinic where he exchanged words with the provider and the medical Assistant." (*Id.* at PageID.3-4).  In the evening, Plaintiff's manager Jacqueline called and asked what happened.  (*Id.* at PageID.4).  After Plaintiff explained the situation, she was suspended.  (*Id.*).  On or around July 6, 2022, Plaintiff was terminated by Juanita Hennigan from the Human Resources department.  (*Id.*).

On or around July 8, 2022, Sgt. Mark went on the news and "falsely stated" that when he walked into the urgent care, he was asked "how many people will kill today after you leave here?" and "why are you walking in here with your get up on?" (*Id.*).  Plaintiff's coworker wrote a statement which "supported that Plaintiff had not made such comments," however Human Resources did not consider the statement and said "nothing was up for discussion[.]"  (*Id.*).

Plaintiff claims that "other non-African American co-workers falsely stated that they heard Plaintiff say things that they did not actually hear, in an effort to get Plaintiff fired."  (*Id.*).  Plaintiff claims that "Defendant automatically took the side of the officer . . . and did no investigation to determine whether she had actually violated any policy" and terminated her on the basis of her race.  (*Id.*).  She argues that "other non-African-American employees have engaged in more serious conduct and were not terminated."  (*Id.*).

She brings claims of discrimination on the basis of race in violation of 42 U.S.C. § 2000e and the Elliott-Larsen Civil Rights Act ("ELCRA"), gender/sexual harassment/discrimination in violation of Title VII and ELCRA, and discrimination in violation of 42 U.S.C. § 1981. (ECF No. 1).

On March 5, 2024, Plaintiff noticed the deposition of Defendant's corporate representative for April 19, 2024. (ECF No. 11-1, PageID.110). Defendant responded and said it was unavailable, and that it wanted to "look at dates in May/June for depositions." (ECF No. 11-2, PageID.127). Plaintiff agreed and suggested multiple dates in May for depositions. (*Id.* at PageID.125). Defendant did not respond, even though Plaintiff followed up to ask for available dates. (*Id.*).

About a month later, Plaintiff's counsel again emailed Defendant's counsel and requested dates in late July. (*Id.* at PageID.122-123). Defendant's counsel suggested August 7th at 12:00 pm. (*Id.* at PageID.120).

On June 24, 2024, Plaintiff's counsel noticed the deposition for August 7, 2024. (ECF No. 9-3, PageID.77). On July 25, 2024, Defendant's counsel sent a re-notice of taking deposition *duces tecum* of Plaintiff on Friday, September 13, 2024 and emailed to Plaintiff's counsel stating that they "will produce [their] Corporate Representative for deposition after we've had the opportunity to take Plaintiff's deposition[,]" and " the deposition currently scheduled for 8/7 will not be going as noticed" without the opportunity to depose Plaintiff, it would not have

4

sufficient information to prepare for its deposition. (ECF No. 9-4, PageID.89); (ECF No. 9-3, PageID.81-82); (ECF No. 11-2, PageID.115). It argued that "[t]he fact that [Plaintiff] noticed the first dep [sic] is not dispositive." (ECF No. 11-2, PageID.115). Plaintiff's counsel responded and stated that "[u]nless there is a protective order from the court, we expect Defendant to comply and produce the witness as scheduled on 8/7." (*Id.* at PageID.117).

Defendant then filed its motion for protective order. In it, Defendant argues that the Court should enter a protective order to prevent Plaintiff from deposing its corporate representative until after completion of Plaintiff's deposition because it lacks sufficient information to meaningfully prepare its corporate representative without deposing Plaintiff. (ECF No. 9, PageID.59-60). It claims it is "unaware of the full extent of Plaintiff's claims and will be severely prejudiced" if Plaintiff is allowed to depose its witness before Plaintiff's deposition. (*Id.* at PageID.60-61). It also states that this will not delay discovery. (*Id.* at PageID.61). Plaintiff's response states that it properly noticed the deposition and any changes would delay discovery. (ECF No. 13, PageID.136-137).

Plaintiff also filed a motion to compel Defendant's corporate designee's deposition. (ECF No. 11, PageID.101). It argues that it complied with Federal Rules of Civil Procedure in noticing the deposition and that Defendant is not complying with discovery. (*Id.* at PageID.107).

5

For the following reasons, Defendant's motion for protective order will be **DENIED** and Plaintiff's motion to compel will be **GRANTED**.

## III. ANALYSIS

a. <u>Governing Standards</u>

Under Fed. R. Civ. P. 26(c), the Court may, "for good cause, issue an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense." "To sustain a protective order under Rule 26(c), the moving party must show good cause for protection from one (or more) harms identified in Rule 26(c)(1)(A) with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)). Also, "[t]o justify restricting discovery, the harassment or oppression should be unreasonable, but discovery has limits and these limits grow more formidable as the showing of need decreases." *Serrano*, 699 F.3d at 901 (internal citations omitted).

b. <u>Discussion</u>

Courts have broad discretion to determine whether a protective order is appropriate and what degree of protection is required. *Seattle Times v. Rhinehart*, 46 U.S. 20, 36 (1984). Federal Rule of Civil Procedure 26(d) provides that:

6

> [u]nless the court . . . orders otherwise, methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, does not operate to delay any other party's discovery.

Its provisions are intended "first, to eliminate any fixed priority in the sequence of discovery, and, second, to make clear and explicit the court's power to establish priority by an order issued in a particular case." Fed. R. Civ. P. 26(d) Advisory Committee Note (1970). It "vests the trial judge with broad discretion . . . to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). "If a party objects to the sequence and timing of any properly noticed depositions, then that party must seek a protective order pursuant to Federal Rule of Civil Procedure 26(c) asking that said depositions be prohibited or stay until after other discovery has been presented based upon a showing of good cause." *Sexual Sin De Un Adbul Blue v. River Rouge, City of*, 2017 WL 2438789, *2 (E.D. Mich. June 6, 2017).

Broadly, federal courts have held that depositions should be conducted in a "first come first serve" basis "as a matter of fairness." *Guidehouse LLP v. Shah*, 2020 WL 13927593, *3 (S.D.N.Y. Oct. 27, 2020); *Loughin v. Occidental Chem. Corp.*, 168 F.R.D. 75 (E.D. Pa. 2005); *see also Schlein v. Wyeth Pharm., Inc.*, 2012 WL 10359554, at *2 (S.D. Ga. Dec. 13, 2012) (collecting cases) ("faced with the

question of priority have, in the main, concluded that the first party to serve a notice of deposition is entitled to priority of questioning at that deposition.").

In the limited authority on this question in this district, at least one court has stated that "under the Federal Rules 'there is no rule of discovery priority . . . '" *Harris v. River Rouge Hous. Comm'n*, 2012 WL 12930807, *3 (E.D. Mich. May 2, 2012) (internal citations omitted). A party seeking to alter the sequence of depositions must show good cause. *Id.* Here, Defendant has not done so.

As to depositions of corporate representatives, a "Rule 30(b)(6) notice 'must describe with reasonable particularity the matters for examination," and the deponent 'must testify about information known or reasonably available to the organization.'" *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 120-121 (E.D. Mich. 2019). "The test for reasonable particularity is whether the request places the party upon reasonable notice of what is called for and what is not." *Id.* (internal quotations and citations omitted). Some courts have found that "reasonable particularity" includes a notice of deposition under rule 30(b)(6) "to identify topics with 'painstaking specificity,'" or "enough specificity to allow the corporation to designate and prepare a representative to testify." *Id.* (internal citations omitted).

First, Plaintiff's notice of deposition is particular enough to allow Defendant to designate and prepare its representative. Plaintiff's notice of deposition states

8

that topics concern general questions about Defendant's "corporate structure," "structure of . . . human resources department," various policy procedures, information from Plaintiff's personnel file, training of Defendant's employees, and other information about Defendant's compensation and procedural structure. (ECF No. 9-3, PageID.78-79). It identifies with specificity the topics of the deposition. *E.g.*, *Pogue v. NorthWestern Mut. Life Ins. Co.*, 2017 WL 3044763 (W.D. Ky. July 18, 2017) (identifying six topics, including Plaintiff's disability claim, Defendant's pleadings and defenses, and Defendant's relationships and involvement with other individuals met the reasonable particularity requirement).

Defendant then argues that "Plaintiff's generalized Complaint fails to provide . . . sufficient information to meaningfully prepare its corporate representative for his/her deposition." (ECF No. 9, PageID.60). This is not so. First, Plaintiff's notice indicates that the questions will concern Defendant's corporate structure, which is information available to Defendant irrespective of Plaintiff's deposition. Next, Plaintiff's complaint contains enough facts for Defendant to prepare its representative. In *Summer v. Detroit Pub. Sch. Cmty. Dist.*, 2022 WL 22257187, at *3 (E.D. Mich. June 30, 2022),[1] which Defendant

---

[1] The Court also notes that Defendant cites *Summer* in its brief to argue that Defendants' proposed sequence of depositions is fair and reasonable. In *Summer*, the Court stated that the aspect of defendants' motion requesting Plaintiff be deposed "before any other defendant or non-party witness, except for any two of the previously noticed non-party witnesses" was granted. *Summer*, 2022 WL 22257187, at *3. In particular, this element of the motion was a reaction to plaintiff's request that she not "be deposed until after [she] deposes all of her witnesses first."

cites, the defendants asked the court to enter a protective order preventing the deposition of defendant Vitti completely or to delay defendant Vitti's deposition until after written discovery.  The court found that the defendant was not entitled to a protective order preventing his deposition because the complaint, though vague, contained "enough facts . . . such that it would be unreasonable to completely deprive [plaintiff] of the ability to depose." *Id*.  This was so even though most of the allegations in the complaint were only broadly made against the defendant in the context of being "one of the 'Defendants" and were directed to other defendants outside of a statement that defendant Vitti "recommended that [she] be terminated[.]" *Id*.

Similarly, the complaint here has sufficient facts to prepare Defendant's witness accurately.  It clearly recites claims against Defendant, including information about Defendant's decision to terminate Plaintiff and Defendant's human resources and management.  Defendant has enough information to prepare for its corporate representative's deposition.[2]

---

*Id*.  The motion was not opposed by plaintiff, and the court found that "nothing about the motion would prevent [it] from granting [the] requested relief." *Id*.  This analysis is different from what is found in this matter, as this motion is opposed, and this Defendant is not seeking a protective order to prevent Plaintiff from delaying discovery, but rather requesting a delay to discovery itself.

[2] Defendant also cites *Harris v. River Rouge Hous. Comm'n*, 2012 WL 1293080, *3 (E.D. Mich. May 2, 2012), in which the court altered the deposition sequence no matter which party filed a notice first.  That said, the facts here differ from *Harris*, because in *Harris* the two parties noticed depositions in October 2011 and Decemeber 2011 but did not follow through with

Finally, Defendant's own actions preclude it from demonstrating good cause. Defendant delayed in setting deposition dates. (ECF No. 9-4, PageID.89); (ECF No. 9-3, PageID.81-82); (ECF No. 11-2, PageID.115). It then voluntarily scheduled the corporate representative deposition on August 7. (*Id.*). One month after the deposition had been noticed on the date Defendant provided, Defendant attempted to circumvent the agreed upon date and delay the deposition. (*Id.*). Because of its consistent delay, Defendant's protective order cannot be granted. (*Id.*). Defendant may examine Plaintiff after its corporate representative is deposed, and Defendant's motion for protective order is **DENIED**.

Because Plaintiff's motion to compel seeks production of Defendant's corporate representative for a deposition, the motion to compel is **GRANTED**. The parties must schedule the deposition to occur within 14 days of this Order.

Finally, Plaintiff seeks attorney's costs and expenses for its motion to compel as allowed by Fed. R. Civ. P. 37(a)(4)(A) and 37(b)(1). As payment of expenses is referenced in Fed. R. Civ. P. 37(a)(5)(A), the Court will consider this a typographical error. In any event, the Court Orders Defendant to pay Plaintiff's reasonable expenses incurred in making its Motion to Compel. If the parties cannot agree on reasonable costs and fees, Plaintiff must file a bill of costs within

---

them as of February 2012, but the court also specified that its rule was "in this instance" and did not make a blanket claim.

21 days of this Order. Defendant must respond to that bill of costs within 14 days of service.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge. E.D. Mich. Local Rule 72.2.

Date: October 21, 2024                    s/Curtis Ivy, Jr.
                                          Curtis Ivy, Jr.
                                          United States Magistrate Judge