UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAQUINTA HIGHTOWER-MATHIS,

    Plaintiff,

v.                                           Case No. 23-13310

NEXTCARE MICHIGAN PROVIDERS,    Sean F. Cox
PLLC,                                     United States District Court Judge

    Defendant.
_____/

**OPINION & ORDER GRANTING
DEFENDANT'S SUMMARY JUDGMENT MOTION (ECF NO. 21)**

    Plaintiff filed this action against her former employer, asserting employment discrimination claims under federal and state law. Discovery has closed and the matter is before the Court on Defendant's Motion for Summary Judgment. The parties have briefed the issues and the Court concludes that oral argument is not necessary. Local Rule 7.1. For the reasons set forth below, the Court GRANTS Defendant's Motion for Summary Judgment and dismisses Plaintiff's claims with prejudice.

**BACKGROUND**

    On December 29, 2023, Plaintiff Laquinta Hightower-Mathis ("Plaintiff") filed this action against Defendant Nextcare Michigan Providers, PLLC. Plaintiff's Complaint asserts the following five counts: 1) "Discrimination On The Basis Of Race," in violation of Title VII (Count I); 2) "Discrimination On The Basis Of Race," in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") (Count II); 3) Gender/Sexual Harassment in violation of Title VII

1

(Count III); 4) Gender/Sexual Harassment in violation of ELCRA (Count IV); and 5)

"Discrimination In Violation of 42 USC § 1981" (Count V).

Discovery has closed.  On March 10, 2025, Defendant filed a Motion for Summary Judgment.  This Court's practice guidelines and Scheduling Order provide, consistent with Fed. R. Civ. P. 56 (c) and (e), the following as to summary judgment motions:

> a.  The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute.  The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
> b.  In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
> c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 2-3).

In compliance with this those guidelines, Defendant's motion includes a "Statement of Material Facts Not In Dispute."  (ECF No. 21 at PageID.242-48).

Despite being granted additional time to respond to motion, Plaintiff filed a response brief on April 21, 2025, that does not comply with the Court's practice guidelines, as it does not respond to Defendant's Statement of Material Facts Not In Dispute.  Plaintiff did not submit any exhibits along with her response brief but her brief does reference the exhibits filed by Defendant.

The following relevant evidence, taken in the light most favorable to Plaintiff, the non-

moving party, is as follows.

Defendant operated an urgent care clinic located on Mack Avenue in Grosse Pointe Woods, Michigan ("the Clinic"). Plaintiff is an African American female. Plaintiff worked at the Clinic as a Patient Service Specialist, having been hired in November of 2021. (Pl.'s Dep. at 42-43).

Plaintiff was responsible for: "Registration of patients to the facility in compliance with established policies and payer requirements in a manner that communicates to the patient that their well-being is the primary mission of NextCare." (Def.'s Stmt. at ¶ 3; Def.'s Ex. B). Plaintiff testified that her job was to "stay at the front desk" of the Clinic and "register patients." (Pl.'s Dep. at 42).

Defendant's Employee Conduct policy provides that, "[e]mployees are expected to conduct themselves in a professional manner at all times performing their job duties." (Def.'s Stmt. at 4; Def.'s Ex. C). Defendant provided Plaintiff with its Employee Conduct policy but Plaintiff does not recall reading it. (Pl.'s Dep. at 44-45).

Defendant maintains a comprehensive, zero-tolerance policy that strictly prohibits discrimination and harassment. (Def.'s Stmt. at 6; Def.'s Exs. D & E). That policy outlines avenues for employees to report any complaints. (Def.'s Stmt. at 7; Def.'s Ex. E). Plaintiff testified that she was aware of Defendant's non-harassment policy. (Pl.'s Dep. at 8). Plaintiff never complained to Defendant that she felt she was being harassed. (Pl.'s Dep. at 130-31).

In April and June of 2022, Defendant documented performance issues with Plaintiff in writing (not attending a mandatory staff meeting and having attendance issues). (Def.'s Ex. F).

On July 5, 2022, at approximately 6:50 p.m., Grosse Pointe Wood Police Department

Public Safety Officer Duncan Gill came to the Clinic for treatment and was wearing his uniform. (Def.'s Stmt. at 12; Def.'s Exs. G & H). Plaintiff did not know Officer Gill and had never met him before. (Pl.'s Dep. at 52-53).

One of Plaintiff's co-workers, Brittany Caver, was registering Officer Gill. Like Plaintiff, Caver is an African American female. (Pl.'s Dep. at 127). Plaintiff was not involved in registering Officer Gill. Nevertheless, Plaintiff asked Officer Gill how long he has been on the police force and then asked him if he has ever killed anyone. (Pl.'s Dep. at 54).

Plaintiff testified that she does not typically ask patients if they have killed anyone one, and that her questions were not relevant for registration or treatment. Plaintiff agrees that her questions to Officer Gill were not necessary questions. (Pl.'s Dep. at 54-56).

After getting registered, Officer Gill went and sat down in the lobby and began using his phone. (Pl.'s Dep. at 57). Officer Gill used his phone to text his supervisor, Sergeant Mark Agnetti, and told him that while he was checking in for his annual tuberculosis ("TB") test he had a rude interaction with a front-desk employee at the Clinic. (Gill Decl., ECF No. 21-8; Agnetti Decl., ECF No. 21-10).

About fifteen minutes later, Sergeant Agnetti arrived at the Clinic, in uniform. Plaintiff believed that he was another walk-in patient that needed a TB test. After entering the Clinic, Sergeant Agnetti asked Officer Gill if he was okay. (Pl.'s Dep. at 59). Although Sergeant Agnetti's question was directed to Officer Gill, Plaintiff responded to his question by saying, "he's okay, we're not bothering him." (Pl.'s Dep. at 61).

Sergeant Agnetti then approached the registration desk where Plaintiff was seated and asked to speak with her supervisor. (Pl.'s Dep. at 63). Plaintiff responded to him by saying "you

4

are my supervisor," to which Sergeant Agnetti replied, "no I am not your supervisor." (Pl.'s Dep. at 64-65).[1] Plaintiff then said "oh, you're serious and he was like yes, I'm dead serious." (*Id*.). Plaintiff then gave Sergeant a business card with Jacqueline Kenyon's name and phone number on it.

While still at the Clinic, Sergeant Agnetti tried calling Kenyon but could not reach her. (Agnetti Decl. at ¶ 5). Sergeant Agnetti then spoke with another employee at the Clinic, Alicia Gronowski, who was able to reach Kenyon and Sergeant Agnetti then spoke with Kenyon. Sergeant Agnetti relayed how he and Officer Gill had been treated at the Clinic and Kenyon apologized and promised to handle the situation. (*Id*. at ¶¶ 6-7).

Kenyon then called and asked Brittany Caver to write a statement about the incident. (Def.'s Stmt. at ¶ 29; Def.'s Ex. J). Plaintiff did not hear Kenyon's conversation with Carver. (Pl.'s Dep. at 74). Caver prepared a written statement confirming that Plaintiff asked Officer Duncan Gill if he has ever killed anyone. (Def.'s Stmt. at § 31; Def.'s Ex. K). Plaintiff did not speak to Caver about her statement. (Pl.'s Dep. at 31).

After her interactions with the two officers that day, Plaintiff sent text messages to her supervisor, Keynon. (Def.'s Ex. L). The first text message from Plaintiff to Kenyon said: "the Sgt wanna talk to you he is a grumpy old man I was joking with his police officer and he got in his feelings." (*Id*.). In the second text to Kenyon, Plaintiff asked to leave work early "cause I don't want him running my tabs while he here and he is mad." (*Id*.).

---

[1]Sergeant Agnetti also states that Plaintiff asked him "how many people [he] was going to beat up that night," but Plaintiff denies that she asked him that question. (Agnetti Decl. at ¶ 3). Thus, for purposes of this motion, the Court credits Plaintiff's testimony that she did not ask that question.

5

Kenyon called Plaintiff and Plaintiff explained her side of the story to her. (Pl.'s Dep. at 75-78; Def.'s Ex. J). Plaintiff then left the Clinic. (Pl.'s Dep. at 75).

Plaintiff has no knowledge regarding Defendant's investigation of the July 5th incident. (Pl.'s Dep. at 76, 91, 117-119 & 133). Defendant obtained witness statements from Kenyon, Caver, and Gronowski, and also spoke with Plaintiff about the incident. (Def.'s Stmt. at 36; Def.'s Exs. J, K, M, and N).

Plaintiff has no knowledge about what the Grosse Pointe Woods Police Department told Defendant. (Def.'s Stmt. at ¶ 38). Neither of the two officers made any race-based comments to Plaintiff. (Pl.'s Dep. at 87).

Plaintiff's conduct caused the Grosse Pointe Woods Police Department to terminate its contract with Defendant. (Def.'s Stmt. at ¶ 40; Def.'s Ex. N).

Defendant terminated Plaintiff's employment on July 6, 2022. (Def.'s Stmt. at ¶ 41; Def.'s Ex. O, termination notice).

Juanita Hennigan testified that Plaintiff was terminated because she made inappropriate comments to the two police officers, which caused Defendant to lose the contract that Defendant had with the Police Department. (Hennigan Dep. at 20-21 & 40).

Plaintiff's supervisor (Kenyon), along with Hennigan from Human Resources and Regional Vice President Scott Walter, made the decision to terminate Plaintiff's employment. (Def.'s Stmt. at ¶ 42; Hennigan Dep. at 25). Hennigan had never met Plaintiff and did not know Plaintiff's race at the time of the termination decision. (Def.'s Stmt. at ¶ 43; Hennigan Dep. at 47).

Plaintiff is not aware of any other Patient Service Specialists who were not terminated

after making inappropriate comments to a patient. (Pl.'s Dep. at 127-128 & 134-35). Plaintiff is also not aware of any other situations with Defendant's employees that involved the police. (*Id*. at 134). Plaintiff is unaware of any employees who replaced her as a Patient Service Specialist with Defendant. (*Id*. at 92).

Plaintiff never complained to Defendant that she felt she was being harassed. (Pl.'s Dep. at 130-31).

On June 9, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Def.'s Ex. P, ECF No. 21-17). On it, Plaintiff stated the alleged discrimination took place between "7/5/22" and "7/10/22." In the section where Plaintiff is to check the boxes indicating the type of discrimination, Plaintiff checked the boxes for "race," "color," "sex," and "retaliation." She did not check the box for "Other (specify)." (*Id*.). In the narrative section, the only thing described was the incident with the police officers and Plaintiff's termination on July 6th. (*Id*.).

Plaintiff filed this civil action against Defendant on December 29, 2023.

Defendant closed the Clinic in 2024. (Hennigan Dep. at 47).

During her deposition in this case, Plaintiff testified that Defendant's termination of her employment had nothing to do with her gender. (Pl.'s Dep. at 128).

## STANDARD OF DECISION

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Peffer v. Stephens*, 880 F.3d 256, 262 (6th

Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

As the party bringing the summary judgment motion, Defendant "has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Sixth Circuit has explained that "Rule 56 places an affirmative duty on the nonmovant to cite to 'particular parts of materials in the record' to establish that a particular fact cannot be supported or is genuinely disputed. Fed.R.Civ.P. 56(c)(1); *see Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 995 (6th Cir.2007)." *Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 734 (6th Cir. 2011). "District courts need not independently comb through the record and establish that it is bereft of a genuine issue of material fact before granting summary judgment." *Emerson, supra*.

## ANALYSIS

Plaintiff alleges that Defendant discriminated against her based upon her race, in violation of Title VII, the ELCRA, and 42 U.S.C. § 1981. Plaintiff also alleges that Defendant harassed and discriminated against her based upon her gender, in violation of Title VII and the ELCRA.

At the summary judgment stage, a plaintiff can support her discrimination claims using either direct or indirect evidence of discrimination. *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003). It is well-established that "[t]he direct evidence and

8

circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348-49 (6th Cir. 1997).

Here, in responding to the pending motion, Plaintiff does not claim that she has any direct evidence to support any of her claims. Rather, Plaintiff seeks to proceed under the circumstantial evidence approach.

When a plaintiff relies on indirect evidence to show discrimination, the familiar *McDonnell Douglas* burden-shifting framework applies. Under that framework, the employee bears an initial burden of making out a prima facie case of discrimination. If she can do so, the employer must provide a legitimate, non-discriminatory basis for the termination. If the defendant does so, the burden shifts back to the plaintiff to show that the proffered reason is merely a pretext for unlawful discrimination. *Id.*

**I.       Plaintiff's Race Discrimination Claims**

"Claims of race discrimination under § 1981 and the ELCRA" are analyzed under the same standards as claims of race discrimination under Title VII. *Bates v. American Axle Mfg., Inc.,* 2019 WL 4941946 at *2 (6th Cir. 2019) (citing *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999)).

To establish a prima facie case of race discrimination, a plaintiff must produce evidence that she: 1) is a member of a protected class, 2) suffered an adverse employment action; 3) was otherwise qualified for the position; and 4) was replaced by someone outside of the protected class or was treated differently than a similarly situated, non-protected employee. *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014).

Here, it is undisputed that Plaintiff is a member of a protected class (African American)

and that she suffered an adverse employment action (termination). For purposes of the pending motion, Defendant also does not challenge the third element. Thus, only the fourth element is contested in the pending motion.

Plaintiff has not submitted any evidence to establish that Defendant replaced her as a Patient Service Specialist with someone outside of the protected class of African Americans. That leaves Plaintiff to establish the final element of a prima facie case by showing that she was treated differently than a similarly situated, non-protected employee. As explained by the Sixth Circuit:

> To be considered similarly situated, a comparator need not be identical, but should be similarly situated "in all *relevant* respects." *Wright,* 455 F.3d at 710 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)) (emphasis in original). "Superficial similarities between a disciplined employee and his colleagues" are not enough to make them comparators. *Arendale v. City of Memphis*, 519 F.3d 587, 604 (6th Cir. 2008). "Differences in job title, responsibilities, experience, and work record can be used to determine whether two employees are similarly situated." *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004) (citing *Pierce v. Commonwealth Life Ins.*, 40 F.3d 796, 802 (6th Cir. 1994)).

*Blount v. Stanley Eng. Fastening*, 55 F.4th 504, 511-12 (6th Cir. 2022).

And where, as here, a termination is disciplinary in nature, the plaintiff must show that her proposed comparators engaged in acts of "comparable seriousness." *Wright v. Murray Gurad, Inc.,* 455 F.3d 702, 710 (6th Cir. 2006). To make this assessment, the Court looks to factors such as whether the individuals have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Id.* (citations omitted).

During her deposition, Plaintiff testified that she is not aware of any white Patient Service Specialists who made inappropriate comments to a patient and were not fired.  (Pl.'s Dep. at 127-28).

Again, Plaintiff did not submit any exhibits along with her response brief.  In her brief, Plaintiff directs the Court to pages 121 and 129 of her deposition transcript (submitted by Defendant) and contends that testimony suffices.  It does not.

On page 121 of her deposition transcript, Plaintiff was asked to identify other non-African-American employees who engaged in more serious conduct than her but were not terminated.  Plaintiff testified that she heard an unidentified white female employee had been accused of stealing.  On page 129 of her deposition transcript, Plaintiff testified the unnamed individual accused of stealing "wasn't fired. To my knowledge, anyway."  Notably, however, Plaintiff has not provided the Court with the name or job title of that individual, or any evidence whatsoever pertaining to this employee, or any facts regarding the alleged incident.

"On this scant and incomplete evidence, a reasonable jury could not find that" that this unidentified employee was similarly situated to Plaintiff.  *Bush v. ProMedica Toledo Hosp., Inc.*, 2022 WL 221639 at *4 (6th Cir. 2022); *see also Fuelling v. New Vision Med. Lab., LLC*, 284 F. App'x 247, 255 (6th Cir. 2008) (Employee failed to create genuine issue of material fact with respect to whether she was similarly situated to comparators where court was presented with no facts about those comparators and "[t]hat failure is fatal to her prima facie case.")

Accordingly, the Court dismisses Plaintiff's race discrimination claims because she has failed to establish a prima facie case of race discrimination.

## II. Plaintiff's Gender Discrimination Claims

To the extent that Plaintiff seeks to assert a claim, under Title VII or the ELCRA, that she was unlawfully terminated because of her gender, that claim fails based on Plaintiff's own deposition testimony. During her deposition in this case, Plaintiff testified that Defendant's termination of her employment had nothing to do with her gender. (Pl.'s Dep., ECF No. 21-1, PageID.292).

## III. Plaintiff's Harassment/Hostile Work Environment Claims Based On Race And Gender

Plaintiff seeks to proceed with harassment/hostile work environment claims, under both Title VII and the ELCRA, based upon both race and gender. Defendant asserts that these claims fail for multiple reasons, including that they are procedurally barred because Plaintiff failed to include them in her EEOC charge. But even if she had included them, those claims would still fail, as explained below.

To be actionable, a work environment must be "permeated with 'discriminatory intimidation, ridicule or insult' sufficiently severe or pervasive to alter the conditions of employment." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008). In order to establish a hostile work environment claim based on race (or gender), Plaintiff must establish that: 1) she belonged to a protected group; 2) she was subject to unwelcome harassment; 3) the harassment was based on race (or gender); 4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and 5) the defendant knew or should have known about the harassment and failed to act. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813 (6th Cir. 2013).

Plaintiff cannot establish a harassment/hostile work environment claim based upon either race or gender.  Plaintiff testified that she does not believe that Defendant harassed her based upon her race or gender.  (Pl.'s Dep., ECF No. 21-1, PageID.291-92).  Thus, Plaintiff cannot establish that the alleged harassment or hostile work environment was based upon her race or gender and, as a result, she cannot establish the third element.  Plaintiff also admits that she never complained to Defendant that she felt like she was being harassed and she therefore cannot establish the fifth element.  (*Id.*).

## CONCLUSION & ORDER

Accordingly, the Court ORDERS that Defendant's summary judgment motion is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.


Dated: June 13, 2025          s/Sean F. Cox
                              Sean F. Cox
                              U. S. District Judge


I hereby certify that on June 13, 2025, the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

                              s/Caitlin Shrum
                              Case Manager